(7 App. Div. 232)

## WILSON v. TAILER.

(Supreme Court, Appellate Division, First Department.    June 29, 1896.)

CONTRACTS—INTERPRETATION.
 Under a contract by which defendant employed plaintiff to superintend the erection of buildings on defendant's land, and agreed to pay plaintiff therefor one-half the net profits of any sale of the property before a certain day, an exchange of the property, within the time limited, for other real property, is a sale, within the meaning of the contract, and plaintiff

has an equitable interest in the property taken in exchange to the extent of one-half the profit that may at any time be realized by sale tnereof.

Appeal from judgment on report of referee.

Action by Bernard Wilson against Robert W. Tailer. Judgment was entered in favor of defendant for $9.51, and plaintiff appeals. Modified.

' The action was brought for an accounting as to transactions between the parties under a written contract with reference to the erection of buildings upon and the sale of real estate. The contract was made June 25, 1890, and provided, in brief, that the defendant was the owner of real estate on the corner of Boulevard and West Eighty-Fourth street, New York City, 111 feet 7 inches on the street, and 102 feet on the Boulevard; that he had divided the property into four lots, and was engaged in the erection of a building on each of the lots; that he had employed the plaintiff to manage and superintend the erection of the buildings, and that it was agreed that, for plaintiff's services in procuring the materials and superintending the construction of the buildings, he should be paid by defendant one-half the net profits upon the sale of any lot sold on or before January 1, 1895; that no sale should be made on or before that date without plaintiff's approval, and if there should be made a bona fide offer in writing from a responsible purchaser for any lot on or before that date, which offer was satisfactory to the plaintiff, defendant should either accept such offer, and sell the lot for the amount offered, or pay to the plaintiff one-half of the net profits which would be realized if the offer were accepted, such payment to satisfy and terminate the agreement so far as such lot was concerned; that time was the essence of the contract, and, if no offer was made as to any lot on or before such date, the contract should then terminate as to such lot, and no profits accruing therefrom should inure in any way to plaintiff's benefit; that the term "net profits" meant the profits realized over and above cost of land and building and all outlay and expenditures of every kind in the purchase, construction, and management of the lot, up to the final conveyance of the same pursuant to such offer, if accepted, or up to the date of the offer if declined, with ·6 per cent. per annum interest on all such moneys from the time of disbursement, less any moneys received from rent or use of such lot; and that, when the houses should be completed, they should be rented for the best sums obtainable, until sale should be effected. The plaintiff al·eg·d in his complaint that the corner lot, with the building erected thereon, was sold in March, 1893, and conveyed to Charlotte R. Lee; that the purchase price thereof was paid in part by the conveyance to defendant of a lot of land on the corner of Boulevard and Eighty-Sixth street, west, subject to a mortgage of $65,000, the lot being worth $120,000; that there was a net profit upon such sale, under the terms of the contract between plaintiff and defendant, of which plaintiff was entitled to one-half; that a bona fide offer of $120,000, which was satisfactory to plaintiff, had been made by a responsible party to the defendant for the Eighty-Sixth street property, which plaintiff had requested defendant to accept, but which defendant had refused to accept, and if the offer had been accepted, and the property conveyed, the plaintiff would have been entitled to a net profit under the agreement, and the defendant had refused to pay such net profit. Upon this state of facts alleged, plaintiff asked that an accounting be had as to the cost under the contract of the Eighty-Fourth street lot, and the net profit of the sale to Mrs. Lee; and that a similar accounting be had as to the Eighty-Sixth street property, taken in payment for the Eighty-Fourth street lot; and that the sum to which the plaintiff was entitled be ascertained; and that he have judgment therefor. The defendant, by his answer, denied that the Eighty-Fourth street lot was sold, but alleged that it was exchanged for the Eighty-Sixth street property, and further alleged that the Eighty-Sixth street property was subject to a mortgage of $75,000, of which $10,000 was paid off by defendant, thus leaving the mortgage $65,000, and that this property, subject to the $75,000 mortgage, was all that he received for the Eighty-Fourth street lot, and that he paid Mrs. Lee on the exchange $2,600 besides. He also denied

that, upon the exchange, any net profit arose of which plaintiff was entitled to a share; and he denied that a bona fide offer of $120,000 from a responsible party had been made for the Eighty-Sixth street property, and alleged that no sale of the Eighty-Fourth street property had been made on or prior to January 1, 1895, so as to entitle plaintiff to any share of the net profit whatever; and he alleged a counterclaim for $1,500, moneys paid by him to the plaintiff, under the contract. There was a reply to the counterclaim. The referee, in deciding the case, held that the exchange of properties, in view of the terms of the contract and the circumstances disclosed by the evidence, amounted to a sale of the Eighty-Fourth street lot; and thereupon he took an accounting as to the net cost of the Eighty-Fourth street house, including all the matters under the contract, and allowing for rents received therefor, and fixed the net cost at $95,081.56. He found that the lot was covered by a mortgage of $60,000, leaving a balance of $15,081.56, which had been paid by defendant. He also found that he received for the Eighty-Fourth street lot, as so incumbered, the Eighty-Sixth street property; that this Eighty-Sixth street property was worth $93,500, and was incumbered by a mortgage for $75,000, and therefore was worth, subject to the mortgage, $18,500, and, after deducting from this amount the $15,081.56 above, there remained in his hands, as net profits of the sale, $3,418.44; that plaintiff's one-half of this was $1,709.22. The referee allowed the defendant's counterclaim, with interest at $1,717.30, and thus found a balance due defendant of $6.08, and adding interest, $1.43, ordered judgment for $9.51; and from this judgment this appeal is taken.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Gratz Nathan, for appellant.

Henry L. Burnett, for respondent.

WILLIAMS, J. We agree with the learned referee that the exchange of the Eighty-Fourth street lot for the Eighty-Sixth street property amounted to a sale of the Eighty-Fourth street lot under the terms of the contract between plaintiff and defendant, and that the defendant received for the Eighty-Fourth street lot on such sale the Eighty-Sixth street property. But it seems to us that the referee erred in taking the accounting upon the theory he did; that is, by charging the defendant, upon such accounting, with the value of the Eighty-Sixth street property at the time of the transfer or sale. The Eighty-Fourth street lot was sold, not for cash, but for the Eighty-Sixth street property. The property received was the purchase price. It was to be accounted for. It belonged to both parties. The legal title was taken in defendant's name, but equitably the plaintiff was entitled to the undivided one-half thereof, subject to the payment or deduction therefrom of the cost of the Eighty-Fourth street lot, under the terms of the contract. The contract did not in express terms provide for any sale of the Eighty-Fourth street property by way of the exchange thereof for other property, and no such sale could have been made except by agreement of the parties. They did agree to it, however; and the evidence shows that the fair intendment of the parties was that the plaintiff should have an interest in the property received therefor,—the Eighty-Sixth street property. The plaintiff testified that he had several interviews with the defendant at the time they were making the trade for the Eighty-Sixth street property, and that the talk was that he (plaintiff) was to

have one-half of the profit when the Eighty-Sixth street property was sold; that, about the time the trade was made, they had a talk in which he (plaintiff) wanted his name in the deed of the Eighty-Sixth street property, and defendant said, "No," but, whenever the property was sold, he (plaintiff) would be entitled to, and would get, his one-half; and that he (plaintiff), after that, tried to procure a purchaser for the property. Defendant did not deny the conversation above testified to by plaintiff, but he did testify that he did not remember the conversation referred to by plaintiff about the time the trade was made, except that he thought plaintiff did then make the remark that he ought to have a deed of the one-half of the Eighty-Sixth street property. The Eighty-Sixth street property, as the purchase price of the Eighty-Fourth street lot, stood in the place of cash, which would have belonged to both parties if cash had been received. Out of the cash received on a cash sale, the cost of the Eighty-Fourth street lot would first have been paid, and the balance would have been divided equally between the parties. The property received instead of cash stood in the same position. It was to be treated the same as the cash would have been if cash had been received. It was not real estate held under the contract, and to be treated as real estate under the contract, the absolute title to which would vest in the defendant if not sold prior to January 1, 1895, divested of any equitable interest in the plaintiff. It was real estate in which the plaintiff had an interest so long as it remained undisposed of, and plaintiff was entitled to have his interest determined, and awarded to him, even though it was not disposed of until after January 1, 1895. The defendant had no right to the absolute title to the property by allowing therefor what it was worth at the time it was received in payment for the Eighty-Fourth street lot. The plaintiff had no right to charge the defendant with the value thereof at that time. If the property thereafter increased in value, the plaintiff was entitled to his share of the increase. If it decreased in value, the plaintiff was obliged to share in the loss by such decrease. In other words, the Eighty-Sixth street property equitably belonged to the parties, the same as though the legal title was vested in both, instead of in defendant alone.

As a necessary result of these views, it follows that the plaintiff was entitled to have what he asked for in his complaint,—an accounting as to the Eighty-Sixth street property, and the amount received therefor, if sold, and, if not sold, to have his equitable rights therein adjudged and determined. The learned referee denied him this relief, and in this he erred. The decision being therefore erroneous, the judgment should be modified by ordering a reference to take an accounting as to the Eighty-Sixth street property in accordance with the views herein expressed.

We do not think a full retrial of the case is necessary, but the judgment appealed from should be modified by providing for an order of reference to take an accounting as to the amount received by defendant for the Eighty-Sixth street property, to the end that, on the coming in of the report of the referee, final judgment might

be rendered for the relief to which the plaintiff is thus entitled. As so modified, the judgment should be affirmed, without costs of this appeal to either party.   All concur.

